# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs February 4, 2003

## STATE OF TENNESSEE v. DOUGLAS R. BEECHAM

**Direct Appeal from the Circuit Court for Cheatham County**
**No. 13825     Robert E. Burch, Judge**

---

**No. M2002-01859-CCA-R3-CD - Filed May 16, 2003**

---

After pleading guilty in the Cheatham County Circuit Court to felony possession of a firearm, the appellant, Douglas R. Beecham, was placed on probation. Immediately after the institution of probation, the appellant submitted a falsified urine sample to his probation officer to use in a drug screen. Based upon the falsified sample, the trial court revoked the appellant's probation and ordered the appellant to serve a portion of his sentence in confinement and the balance on probation. On appeal, the appellant complains that the trial court erred in revoking his probation. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Jay Norman, Nashville, Tennessee, for the appellant, Douglas R. Beecham.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Robert S. Wilson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

On April 24, 2002, the appellant pled guilty to being a convicted felon in possession of a firearm. The trial court sentenced the appellant to probation after the service of ten days in jail and the payment of a fifty dollar fine. At the appellant's probation revocation hearing, Cheatham County probation officer Debra Vance testified that after court on the day of the appellant's plea, the appellant accompanied her to the probation office, which office was located approximately 200 feet from the courthouse. Vance noted that she knew the appellant because she had been his probation officer on a previous occasion.

Vance and the appellant reviewed the rules and regulations of probation. Vance then asked the appellant if he could pass a drug screen. The appellant "was very confident. He said yes, he can; he doesn't, you know, use drugs." At that point Vance brought out a "drug-screening form" and instructed the appellant to submit to a drug screen. According to Vance, the appellant "became very upset and used some vulgar language, hung his head; and at that point he told me that he –I couldn't violate him because he wasn't really on probation yet. I said, Well, he was on probation now, and we would do the drug screen."

The appellant then confessed that he would test positive for drugs. The appellant explained that he had been "clubbing" the night before and "somebody had put drugs in his drink." Vance assured the appellant that she would not violate his probation because of the positive drug screen; she simply needed documentation of his drug use in order to refer him for drug and alcohol treatment. After Vance's assurances, the appellant went to produce a urine sample for the drug screen. Because there were no male witnesses available, the appellant was permitted to produce the urine sample unsupervised.

Vance testified that the appellant returned to her office "with the clearest urine that I've ever seen." Vance felt of the specimen cup and noted that the cup was hot. Vance "confronted him about water, and he did admit and did sign that he had put hot water in the cup because he knew he couldn't pass a drug screen." Subsequently, the appellant submitted to a second, supervised drug screen, which tested positive for cocaine. Vance submitted a probation violation form alleging that the appellant "alter[ed] a drug screen" in violation of Rule 7 of his probation, which rule provides that the appellant "will not use intoxicants (beer, whiskey, wine, etc.) of any kind to excess, or use or have in [his] possession narcotic drugs or marijuana."

At the time of the revocation hearing, the appellant had been on probation for two months. Each month, the appellant had one meeting with Vance as required. Vance noted that the appellant was supposed to contact Cumberland Heights for a drug assessment, but she did not know if he had complied.

> The trial court ruled that
> [t]he proof establishes that [the appellant] did not use drugs while he was on probation. Obviously he was on probation as soon as he entered – entered the plea. And I agree with Counsel that the chances of him using drugs between that point and when he got over to the Probation Office was very slight; and obviously, probably they wouldn't have metabolized during that period of time, anyway.
>
> The violation is the – the subterfuge, the trickery, which, to what end? You know, I –I can't –I – I can't figure that out. If he'd admitted using them and then he came up clean, what–how was he going to explain that?
> . . . .

The whole basis of probation is based upon candor between the probation officer and the probationer. Without truthfulness, we can't help them in prisons.

Therefore, the court finds that [the appellant] is in violation of the terms and conditions of his probation. And just because of the recommendation of the State, I'm not going to revoke his entire probation; but I am going to require him to serve six months in the County Jail and then be released back on probation.

On appeal, the appellant contends that the trial court erred in revoking his probation and in ordering him to serve six months of his sentence in incarceration and the balance on probation.

## II. Analysis

Appellate review of the length, range or manner of service of a sentence is de novo. Tenn. Code Ann. § 40-35-401(d) (1997). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the appellant in his own behalf; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102 and -103 (1997), -210 (Supp 2002); see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

Upon finding by a preponderance of the evidence that the appellant has violated the terms of his probation, a trial court is authorized to order an appellant to serve the balance of his original sentence in confinement. See Tenn. Code Ann. § 40-35-310 (1997); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Furthermore, probation revocation rests in the sound discretion of the trial court and will not be overturned by this court absent an abuse of that discretion. State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995). An abuse of discretion exists when "the record contains no substantial evidence to support the trial court's conclusion that a violation has occurred." State v. Conner, 919 S.W.2d 48, 50 (Tenn. Crim. App. 1995).

The appellant does not deny that he failed the drug screen. Furthermore, the appellant does not deny that he submitted hot water instead of a urine sample, even after warning Vance that his urine would test positive for drugs. However, the appellant argues that his behavior was "childish" and "juvenile" and should not have served as a basis for revoking his probation.

Initially, we note that while both the State and the appellant's probation officer contend that the appellant violated Rule 7 of his probation, quoted *supra*, it is clear that the appellant

in fact violated Rule 8. That rule requires the appellant to submit to random drug screens as directed. Vance testified at the probation revocation hearing that she considered the appellant's submission of hot water instead of a urine specimen to be a refusal to take the required drug screen.

The appellant was made aware of the rules and regulations governing his probation. Moreover, Vance testified that she had previously supervised the appellant as a probationer. Approximately forty-five minutes after the trial court granted the appellant the largesse of probation, he submitted a falsified urine sample to his probation officer despite her assurances that a positive drug screen would not result in the revocation of his probation. However, Vance did inform the appellant that she needed the documentation of a positive drug screen in order to obtain drug treatment for him. The appellant was given every opportunity to comply with the terms of his probation; yet, he attempted to deceive his probation officer. See State v. Steven E. Smith, No. E2001-02892-CCA-R3-CD, 2002 WL 31819128, at *2 (Tenn. Crim. App. at Knoxville, Dec. 16, 2002) (concluding that the defendant's substitution of a vial of his wife's urine for his own to prevent failing a drug screen was sufficient reason for a probation revocation), perm. to appeal denied, (Tenn. 2003). As the trial court noted, the appellant's behavior did not bode well for his rehabilitative potential.

As we noted earlier, once a trial court revokes an appellant's probation, the trial court may, in its discretion, order the appellant to serve the original sentence imposed. Specifically, Tennessee Code Annotated section 40-35-311(e) (Supp. 2002) provides:

> If the trial judge should find that the defendant has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right . . . to revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered.

Accordingly, in the instant case, the trial court acted within its discretion in revoking the appellant's probation and in ordering the appellant to serve six months in confinement and to serve the balance on probation.

### III. Conclusion

Finding no error, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE