IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 11, 2004

## STATE OF TENNESSEE v. LILLY BELL GIFFORD

**Direct Appeal from the Criminal Court for Sumner County**
**No. CR448-1999      Jane W. Wheatcraft, Judge**

_____

**No. M2003-02828-CCA-R3-CD - Filed September 15, 2004**

_____

The appellant, Lilly Bell Gifford, pled guilty in the Sumner County Criminal Court to the sale of cocaine, and the trial court sentenced her to six years incarceration in the Tennessee Department of Correction. However, the appellant was permitted to serve the bulk of her sentence on probation. Thereafter, the trial court revoked the appellant's probation and ordered her to serve the balance of her sentence in confinement. On appeal, the appellant challenges the revocation of her probationary sentence. Upon our review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Cynthia Hall Templeton, Gallatin, Tennessee, for the appellant, Lilly Bell Gifford.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; Lawrence Ray Whitley, District Attorney General; and Dee Gay, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

On December 13, 1999, the appellant pled guilty to the sale of cocaine, a Class C felony, and she was given a sentence of six years. All but thirty days of her sentence was suspended. Several probation violation warrants were filed against the appellant during her probationary term. Specifically, on April 20, 2000, a revocation warrant was filed based upon the appellant's March 31, 2000, arrest for assault. Another revocation warrant was filed on March 27, 2001, based upon the appellant's arrest and conviction for driving on a suspended license, her failure to report her arrest and conviction, her failure to report to her probation officer, her failure to attend counseling, and her

failure to pay court costs. Again, on June 19, 2001, another probation violation warrant was filed, stating that the appellant had failed to report to her probation officer, her whereabouts were unknown, she had failed to verify employment, and she had failed to verify any payment of court costs. On July 22, 2003, a probation violation warrant was issued, alleging that the appellant had failed to report to her probation officer since March 14, 2002.

As the basis for the instant revocation, on August 28, 2003, another probation violation warrant was filed, maintaining that the appellant "was found guilty in General Sessions Court of the following, Criminal Impersonation: 180 Days Suspended, Simple Poss[ession] of Mari[juana] <½ Oz. 11/29 Suspended. Disposition was 8/20/03." The offenses of criminal impersonation and possession of marijuana occurred on March 9, 2003.

On October 6, 2003, at the revocation hearing relating to the August 28, 2003, warrant, Clarence McQuary testified that he became the appellant's probation officer on August 7, 2001. He stated that he had filed the July 22, 2003, and August 28, 2003, probation violation warrants against the appellant. He maintained that while the appellant's arrests for criminal impersonation and possession of marijuana occurred prior to the July 22, 2003, revocation warrant, he did not include the arrests as grounds for revocation because, at that time, he did not know about the arrests. Specifically, McQuary explained that because the appellant had not reported her arrests, he "was unaware of the arrest until after I heard about the arrest on the last hearing [regarding the July 22, 2003, revocation warrant]."

The appellant testified at the instant revocation hearing. She admitted that she did not report her March 9, 2003, arrests to her probation officer, explaining that she had stopped reporting to him. She stated that she stopped reporting after she "quit going to school" because "it just did something to me." The appellant feared that McQuary would revoke her probation because she stopped attending mandated literacy classes. The appellant acknowledged that she should have been reporting to her probation officer. Additionally, she maintained that she was a "believer" now and would comply with the terms of probation to avoid a sentence involving confinement.

At the conclusion of the proof, the trial court found that McQuary's failure to include the appellant's March 2003 arrests in her July 2003 revocation warrant was the appellant's fault "because she was on the run. . . . If she had been reporting and doing what she was supposed to, she would be in a position to tell her probation officer, but she wasn't because she didn't report." The court found that the appellant was unable to comply with the terms of supervised probation. Although the appellant had been given many chances to "tak[e] advantage of the opportunities she has been given, to serve this sentence on probation," she has repeatedly failed to follow the terms of probation. Accordingly, the trial court revoked the appellant's probation and ordered her to serve the balance of her sentence in confinement. On appeal, the appellant challenges the revocation of her probation.

## II.  Analysis

Generally, the decision of whether to revoke an appellant's probation rests in the sound discretion of the trial court, a decision which will not be overturned by this court absent an abuse of that discretion.  See State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995).  An abuse of discretion exists when "the record contains no substantial evidence to support the trial court's conclusion that a violation has occurred."  State v. Conner, 919 S.W.2d 48, 50 (Tenn. Crim. App. 1995).  Upon finding by a preponderance of the evidence that the appellant has violated the terms of her probation, a trial court is authorized to order an appellant to serve the balance of her original sentence in confinement.  See Tenn. Code Ann. §§ 40-35-310 and -311(e) (2003); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991).

On appeal, the appellant argues that "[t]he evidence established that [the appellant's] probation should not have been revoked on October 6, 2003 for crimes occurring on March [9], 2003 when [the appellant] had already had her probation revoked on August 11, 2003 and had been continuously incarcerated since July 21, 2003."  Further, the appellant summarily stated, "Since 'the trial court's logic and reasoning were improper when viewed in the light of the factual circumstances and the legal principles involved,' relief should be granted by this court."

The appellant does not dispute that she was arrested and convicted for criminal impersonation and possession of marijuana while she was on probation.  She merely disputes the timing of the revocation, contending that the grounds alleged in the August 28, 2003, warrant should have been included in the July 22, 2003, warrant.  However, as the trial court noted, McQuary was unable to include the arrests in the July 22 warrant because he was unaware of the arrests due to the appellant's failure to report.  Moreover, the August 28 warrant specifically lists the appellant's convictions, which did not occur until August 20, as the basis for the appellant's probation revocation.  Accordingly, there was sufficient proof at the revocation hearing to support the trial court's finding that the appellant could not comply with the laws of this state or the terms of her probation.  Upon so finding, the trial court was within its power to revoke the appellant's probation and order her to serve the balance of her sentence in confinement.

## III.  Conclusion

Finding no reversible error, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE